```
 1                UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NORTH CAROLINA
 2                       WESTERN DIVISION

 3

 4   UNITED STATES OF AMERICA,-   Docket No. 5:19-cr-336-FL-1
                               -
 5       Plaintiff,            -   New Bern, North Carolina
                               -   April 5, 2023
 6          v.                 -   Sentencing
                               -
 7   KEVIN HAROLD RUDOLPH,      -
                               -
 8       Defendant.            -
     -------------------------------

 9

10          PUBLIC TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
11               UNITED STATES DISTRICT JUDGE.

              (PURSUANT TO STANDING ORDER 22-SO-1,
12   PORTIONS OF ALL CHANGE OF PLEA AND SENTENCING
     TRANSCRIPTS ARE RESTRICTED)
13
     APPEARANCES:
14
     For the Plaintiffs:  United States Attorneys' Office
15                        By:  Jake D. Pugh
                          150 Fayetteville Street, Suite 2100
16                        Raleigh, NC 27601
                          (919) 856-4500
17
     For the Defendant:  Tarlton Law Firm
18                        By:  Raymond C. Tarlton
                          PO Box 91624
19                        Raleigh, NC 27675
                          (919) 390-1278
20
     Court Reporter:      Tracy L. McGurk, RMR, CRR
21                        413 Middle St.
                          New Bern, NC 28560
22                        (419) 392-6626

23

24

     Proceedings recorded by mechanical stenography,
25   transcript produced by notereading.
```

|     |     |
| --- | --- |
|     | 1   (Commenced at 2:31 p.m.) |
|     | 2   THE COURT:  United States v. Rudolph. |
| 00:00:52 | 3   Are you Kevin Harold Rudolph? |
| 00:00:56 | 4   THE DEFENDANT:  Yes, ma'am. |
| 00:00:56 | 5   THE COURT: I will sentence you today.  I am |
| 00:00:58 | 6   Judge Flanagan, and the crime for which you will be |
| 00:01:00 | 7   sentenced is sex trafficking of a minor and aiding and |
| 00:01:03 | 8   abetting. |
| 00:01:04 | 9   Have you read the presentence report? |
| 00:01:05 | 10  THE DEFENDANT:  Yes, ma'am. |
| 00:01:05 | 11  THE COURT:  Have you had enough time to talk |
| 00:01:07 | 12  to Mr. Tarlton to be ready today to be sentenced? |
| 00:01:11 | 13  THE DEFENDANT:  Yes, ma'am. |
| 00:01:11 | 14  THE COURT:  The details of this crime are |
| 00:01:13 | 15  horrific.  I've reviewed the information in the |
| 00:01:17 | 16  presentence report relating to the prostitution of the |
| 00:01:24 | 17  14-year-old juvenile who had run away from some type of |
| 00:01:29 | 18  group home and found herself in your clutches and the |
| 00:01:37 | 19  clutches of another. |
| 00:01:38 | 20  Your criminal history is outlined, your |
| 00:01:46 | 21  background as it relates to your family life, your work |
| 00:01:49 | 22  life, your education.  I've reviewed all of that |
| 00:01:53 | 23  information. |
| 00:01:56 | 24  The probation office believes the total |
| 00:01:57 | 25  offense level is a 31 keyed off of the criminal history |

| | | |
|---|---|---|
| 00:02:00 | 1 | category of a IV, promotes advice of 151 to 188 months. |
| 00:02:05 | 2 | But the government believes that is |
| 00:02:06 | 3 | incorrect.  The government believes that a two-level |
| 00:02:14 | 4 | enhancement should be applied because of your undue |
| 00:02:17 | 5 | influence on a minor to engage in prohibited sexual |
| 00:02:25 | 6 | conduct. |
| 00:02:25 | 7 | I will note that I sentenced Mr. Gambrell |
| 00:02:28 | 8 | previously to 210 months in prison.  He had an offense |
| 00:02:33 | 9 | level of a 33 and a criminal history category of a V. |
| 00:02:38 | 10 | The advice I received in his case was 210 to 262 months. |
| 00:02:45 | 11 | Can you remind me, was that two-level |
| 00:02:47 | 12 | increase at issue in that prior matter? |
| 00:02:52 | 13 | MR. PUGH:  Your Honor, Mr. Gambrell was |
| 00:02:54 | 14 | sentenced under the Production of Child Pornography |
| 00:02:56 | 15 | guideline, so starting at an entirely different |
| 00:02:59 | 16 | calculation.  It was not an issue in that sentencing. |
| 00:03:02 | 17 | THE COURT:  Okay.  Would you like to proceed |
| 00:03:04 | 18 | today on this objection? |
| 00:03:05 | 19 | MR. PUGH:  Yes, Your Honor. |
| 00:03:06 | 20 | THE COURT:  I'd invite you to be seated, Mr. |
| 00:03:08 | 21 | Tarlton.  I'll certainly give you a chance to respond. |
| 00:03:11 | 22 | MR. PUGH:  Yes, Your Honor.  The great |
| 00:03:14 | 23 | majority of this is set forth in the PSR, and Detective |
| 00:03:19 | 24 | Faust here can answer any questions as necessary.  But |
| 00:03:22 | 25 | I think it would be best if I just summarized why I |

00:03:25  1   think it applies.

00:03:27  2           To start with, the guidelines create a

00:03:30  3   presumption when there is a ten-year age difference.   I

00:03:33  4   did note that in my objection.   This victim, A.B., had

00:03:36  5   turned 14 only in October of the same year of this

00:03:40  6   conduct.   And this conduct unfortunately took place

00:03:43  7   essentially on Christmas Day of 2018.   She had only

00:03:47  8   just turned 14.   This is a girl who is still in middle

00:03:51  9   school.

00:03:53  10          Mr. Rudolph was to turn 24 in mid January of

00:03:59  11  2019.

00:04:00  12          THE COURT:   So he was just about two weeks

00:04:02  13  before his -- two or three weeks before his 24th

00:04:06  14  birthday?

00:04:06  15          MR. PUGH:   Yes, Your Honor.   The

00:04:08  16  presumption applies if there's ten years.   Here we have

00:04:12  17  nine years and three fourths.   But that's a starting

00:04:14  18  point.   While there's no presumption, I think the Court

00:04:15  19  can certainly take into account this is a sizeable age

00:04:19  20  difference to a minor who's not 17, is not 16, but

00:04:22  21  barely 14 years old.   And I'd submit that the younger

00:04:26  22  we go with a minor, the less age difference we need for

00:04:30  23  there to be good reason that there is influence here.

00:04:33  24          Then this minor in particular; she actually

00:04:38  25  was kicked out of a temporary placement by Child

00:04:41 1 Protective Services. She was kicked out of that home

00:04:45 2 and found herself in these hotels in Raleigh wearing --

00:04:52 3         THE COURT: Pajamas.

00:04:53 4         MR. PUGH: Pajamas, sandals, no coat, no

00:04:57 5 phone, essentially no belongings for someone who's

00:05:00 6 barely 14 years old.

00:05:01 7         THE COURT: Who kicked her out?

00:05:02 8         MR. PUGH: My understanding is it was an

00:05:05 9 elderly couple that she was placed with on an emergency

00:05:08 10 basis. And I don't know the specifics for how she was

00:05:12 11 kicked out, although perhaps the Detective Faust -- or

00:05:15 12 later I will have her guardian ad litem at the time, Ms.

00:05:20 13 Simons, who might know some more of those details.

00:05:27 14         THE COURT: Okay.

00:05:27 15         MR. PUGH: So we have someone who is

00:05:29 16 exceptionally vulnerable here, very young, really no one

00:05:33 17 to turn to as far as people giving her shelter. And

00:05:35 18 she finds shelter from these two significantly older

00:05:39 19 men. She, in fact, according to Rudolph in his

00:05:44 20 interview, told them she needed help. And he said:

00:05:47 21 Well, what can you bring to the table?

00:05:51 22         She was asked, victim A.B.: Who suggested

00:05:54 23 this online prostitution?

00:05:57 24         And she said: They first suggested the idea

00:05:59 25 of creating an ad, to which she said no. But they

00:06:03 1 reminded her that: Hey, if we're going to have this

00:06:06 2 hotel, you're going to need to contribute.

00:06:09 3 And there's no evidence she had done

00:06:10 4 anything like that before, any sort of commercial sexual

00:06:14 5 activity.

00:06:16 6 They did take her to another hotel. They

00:06:18 7 created this advertisement for her. They supervised

00:06:21 8 her as these many men came and visited. Rudolph

00:06:25 9 himself actually brought in another minor who was

00:06:28 10 present and sort of helped oversee these transactions as

00:06:34 11 they took place. And they took her money, as we often

00:06:37 12 see in cases like this. She wasn't the one collecting

00:06:41 13 it.

00:06:41 14 So they suggested this opportunity, said

00:06:44 15 that this is what she needed to do to have this shelter

00:06:47 16 that she lacked.

00:06:49 17 And sure enough, being only 14, she went

00:06:53 18 forward with this.

00:06:54 19 She was asked why she didn't leave. And

00:06:57 20 she essentially said that someone was present the whole

00:06:59 21 time, and she didn't feel comfortable leaving. She

00:07:03 22 said she wasn't threatened, but at the same time she

00:07:05 23 really didn't feel like that was an option.

00:07:08 24 Given all of those circumstances, I think

00:07:10 25 it's easy to see, based on how vulnerable she was and

| | | |
|---|---|---|
| 00:07:16 | 1 | the age difference and this -- this was a troubled |
| 00:07:19 | 2 | child.  She'd gotten in trouble before, but nothing |
| 00:07:22 | 3 | like this.  Nothing like this commercial sex activity. |
| 00:07:25 | 4 | And as you'll hear later, this might have |
| 00:07:28 | 5 | been the big step that led to more trouble later in her |
| 00:07:34 | 6 | life and in the years that followed. |
| 00:07:36 | 7 | So we do believe the enhancement should |
| 00:07:38 | 8 | apply. |
| 00:07:39 | 9 | THE COURT:  Okay.  Two-level enhancement if |
| 00:07:51 | 10 | a participant unduly influenced a minor to engage in |
| 00:07:54 | 11 | prohibited sexual conduct.  The commentary provides |
| 00:07:59 | 12 | that in a case in which a participant is at least ten |
| 00:08:02 | 13 | years older, there's a rebuttable presumption. |
| 00:08:09 | 14 | The Fourth Circuit has found, albeit it in |
| 00:08:12 | 15 | an unreported opinion, this enhancement appropriate |
| 00:08:15 | 16 | where the defendant told the victim the victim would be |
| 00:08:19 | 17 | taken care of, but also exhibited violence when the |
| 00:08:23 | 18 | victim didn't follow the rules. |
| 00:08:25 | 19 | Here we don't have violence, but we have |
| 00:08:29 | 20 | instruction:  Don't touch the money that the clients had |
| 00:08:34 | 21 | left for services; access to shelter is controlled; |
| 00:08:41 | 22 | money is confiscated that she could have used to obtain |
| 00:08:45 | 23 | alternative shelter; the vulnerability; the child's age, |
| 00:08:53 | 24 | even though she did say she was older.  I believe she |
| 00:08:56 | 25 | said she was 18; is that correct? |

| | | |
|---|---|---|
| 00:08:58 | 1 | MR. PUGH:  Yes, Your Honor. |
| 00:08:59 | 2 | THE COURT:  But he's wearing pajamas and |
| 00:09:03 | 3 | bedroom slippers, and it's Christmas. |
| 00:09:06 | 4 | MR. PUGH:  Yes, Your Honor.  And I'll just |
| 00:09:09 | 5 | submit, we met the victim early on in this case.  And if |
| 00:09:13 | 6 | anything, she's baby faced for a 14-year-old when we met |
| 00:09:17 | 7 | her. |
| 00:09:19 | 8 | THE COURT:  Well, Mr. Tarlton, what have you |
| 00:09:22 | 9 | to say in response to the objection? |
| 00:09:26 | 10 | MR. TARLTON:  I'll just say at the outset |
| 00:09:28 | 11 | it's a horrible case, and there's a lot of tragic |
| 00:09:31 | 12 | aspects, for certain. |
| 00:09:33 | 13 | And, of course, the law does take into |
| 00:09:37 | 14 | account her age.  That's what makes the prostitution of |
| 00:09:43 | 15 | somebody underage automatically human trafficking, and |
| 00:09:46 | 16 | that feeds into the base offense level and other |
| 00:09:50 | 17 | enhancements that apply, Your Honor. |
| 00:09:54 | 18 | And you're right, there's not a published |
| 00:09:56 | 19 | Fourth Circuit case that clearly lays out the standard. |
| 00:10:00 | 20 | The Eleventh Circuit has further defined |
| 00:10:03 | 21 | this undue influence prong as -- in drawing on the |
| 00:10:09 | 22 | Application Note 3, that you have to closely look at the |
| 00:10:12 | 23 | facts of the case; it's not merely an age disparity that |
| 00:10:16 | 24 | drives this enhancement.  But the Eleventh Circuit said |
| 00:10:19 | 25 | in *United States v. Root*, a 2002 case, it's when |

there's -- the defendant displays sort of an abusive superior knowledge, influence and resources.

And I would just ask the Court to consider -- I think there's a Fourth Circuit case where the presumption did apply, and that was the case of -- it's called *Arbaugh*. That case, that was a 30-year-old missionary affiliated with a church in Virginia, went down to Haiti and sexually abused young kids down there.

Here, Mr. Rudolph at the time was 23 years old, essentially homeless himself. He had been gainfully employed at places like fast food and, when this happened, Atlantic Kitchen and Tile in Raleigh. He was also struggling with drug addiction and depression and was living in and out of shelters and hotels. And that's confirmed in the presentence report.

He's 23 years old. Even the Fourth Circuit has credited in juvenile resentencing testimony hearings that the brain is not fully developed until you're 25 years old. He's not -- he doesn't really have resources or showing superior knowledge and that sort of thing that you would assume like a true adult and sort of occupying almost like a parental role would have that would rise to the level of the kind of undue influence that goes above and beyond the inherent nature of this offense that the base offense level and other

00:12:04  1    enhancements take into account.

00:12:07  2              The Fifth Circuit has focused on threats of

00:12:12  3    "you can't leave" and abuse inflicted on somebody else

00:12:18  4    as a way to signal to somebody they can't leave.

00:12:21  5    That's the *Pringler* case out of the Fifth Circuit, a

00:12:27  6    published decision, 2014.  Obviously here that's not

00:12:32  7    what happened.

00:12:32  8              Again, it's a horrible thing.  And my

00:12:35  9    client accepted responsibility for this and is facing

00:12:38  10   serious time in any scenario here, Your Honor.  But his

00:12:42  11   sort of direct role with A.B., the teenager in this

00:12:46  12   case, who did hold herself out as 18 years old.  And I

00:12:50  13   would point out when my client and his co-defendant met

00:12:53  14   her, she had run away I think on December 22nd, she was

00:12:56  15   already staying with other people in another hotel for

00:13:00  16   days.  She wanted to leave that hotel apparently, or at

00:13:08  17   least Mr. Gambrell talked her into it.  And according

00:13:11  18   to Mr. Gambrell in the uncontested PSR, she had already

00:13:15  19   been prostituting at the other hotel associated with

00:13:19  20   other people.  This wasn't a situation where my client

00:13:22  21   talked her into that.  That's not what the PSR shows,

00:13:25  22   Your Honor.

00:13:25  23             Again, it's a horrible thing.  And we

00:13:27  24   understand the mens rea here doesn't require that my

00:13:31  25   client actually know that she is under 18 for this

00:13:36 1  offense.  But there's -- my client was in a delicate,

00:13:43 2  financially rough position himself.

00:13:45 3          It's a horrible thing all around, Your

00:13:47 4  Honor.  But we would just respectfully agree with

00:13:50 5  probation's position.

00:13:51 6          THE COURT:  As horrible as it was, I do

00:13:55 7  agree with probation's assessment.  So the advice that

00:13:58 8  I receive is a sentence between 151 to 188 months.

00:14:07 9          Of course, I'm not bound by that.  I can't

00:14:11 10 sentence the defendant to less than ten years.  And he

00:14:14 11 could be sentenced to the rest of his life.

00:14:19 12         What have you to say, Mr. Tarlton?

00:14:22 13         MR. TARLTON:  We would just respectfully ask

00:14:24 14 for a guideline sentence, Your Honor.

00:14:25 15         I started touching on some things under

00:14:27 16 3553(a).  Your Honor is well aware under *Rita*, *Gall*,

00:14:34 17 *Kimbrough*, you sentence not just the offense, but the

00:14:37 18 offender.  And you have to take into account all

00:14:40 19 nuances of one's life and the offense and everything

00:14:43 20 else in arriving at the sentence that's sufficient but

00:14:47 21 not greater than necessary to accomplish the

00:14:49 22 congressional punishment aims under the statute.

00:14:53 23         I think Your Honor has touched accurately on

00:14:56 24 things about the nature of the offense and the need to

00:14:59 25 promote respect for the law and to deter others.  Those

00:15:05 1   are all very important factors and important factors

00:15:09 2   here.   The guidelines capture that, Your Honor.   And

00:15:12 3   there's also an important need to help people

00:15:18 4   rehabilitate back into society.

00:15:20 5           My client has been incarcerated on this

00:15:26 6   going back to 2019, and it started out in state court in

00:15:31 7   Wake County.  Before this the most amount of time he has

00:15:38 8   ever served, I think it was 90 days on a probation

00:15:42 9   violation for his one felony offense.

00:15:47 10          His prior criminal history, although he

00:15:49 11  certainly had contact, brushes with the law, the nature

00:15:52 12  of this offense would be aberrant compared to his prior

00:15:57 13  criminal history.   Your Honor, he's never been

00:15:58 14  convicted of essentially playing a pimp role in a

00:16:04 15  prostitution or trafficking type scenario.  I would say

00:16:11 16  that this wasn't his inherent lifestyle.   He was at the

00:16:15 17  time working at Atlantic Kitchen and Tile.   He had been

00:16:20 18  doing other jobs ever since he graduated from Enloe High

00:16:24 19  School in Raleigh.  He even worked in high school.   The

00:16:28 20  employment history in the PSR confirms that.   He worked

00:16:32 21  restaurant jobs, then later through staffing agencies a

00:16:35 22  lot of labor/construction-type jobs.  And literally when

00:16:40 23  this was going on at this hotel, his main thing he was

00:16:43 24  doing over those days was working at Atlantic Kitchen

00:16:47 25  and Tile.   That's where he got his share of the money

| | | |
|---|---|---|
| 00:16:50 | 1 | for the hotel. |
| 00:16:52 | 2 | But he did obviously take on a role in that. |
| 00:16:54 | 3 | And this is an incredibly serious offense, Your Honor. |
| 00:16:59 | 4 | But you can see, I think the PSR shows -- well, in some |
| 00:17:03 | 5 | ways that Mr. Gambrell is in some ways the driving force |
| 00:17:08 | 6 | of this. |
| 00:17:10 | 7 | That being said, Your Honor, he had a rough |
| 00:17:15 | 8 | childhood. He was sexually molested himself when he |
| 00:17:19 | 9 | was a kid. He had signs of mental health disorders, |
| 00:17:24 | 10 | depression, and that sort of thing. He even had gone |
| 00:17:28 | 11 | through outpatient treatment at Dorthea Dix Hospital in |
| 00:17:31 | 12 | Raleigh. The jail staff actually got him on |
| 00:17:35 | 13 | medications that seemed to help him, Your Honor. He's |
| 00:17:39 | 14 | taking things for depression and other mental health |
| 00:17:42 | 15 | issues now. |
| 00:17:44 | 16 | I know since September of 2021 since he's |
| 00:17:47 | 17 | been in the Pitt County Jail -- I know these tablet |
| 00:17:50 | 18 | classes are -- it's not going to college or community |
| 00:17:54 | 19 | college or anything like that. But he has tried to |
| 00:17:57 | 20 | avail himself of all those tablet-based class |
| 00:18:01 | 21 | opportunities and had the Pay Tel folks send me a |
| 00:18:05 | 22 | summary that shows just an enormous amount of different |
| 00:18:08 | 23 | topics. |
| 00:18:08 | 24 | THE COURT: Well, I think I'm more, as one |
| 00:18:11 | 25 | looks for good and hopefulness, I'm more taken with the |

| | | |
|---|---|---|
| 00:18:15 | 1 | fact that with the circumstances of his childhood he |
| 00:18:21 | 2 | still was able to graduate from high school and not at |
| 00:18:24 | 3 | the bottom of the class. |
| 00:18:27 | 4 | MR. TARLTON:  He did six months of community |
| 00:18:30 | 5 | college after that.  I think one thing that was going |
| 00:18:33 | 6 | on is untreated mental health at the time, coupled with |
| 00:18:36 | 7 | a pretty serious drug addiction.  He picked up regular |
| 00:18:40 | 8 | marijuana use when he was 16; by 18 had gotten hooked on |
| 00:18:45 | 9 | cocaine.  And that's, I think, despite a real work |
| 00:18:50 | 10 | ethic that's confirmed in the two character letters that |
| 00:18:53 | 11 | we submitted, Your Honor, that shows he's got potential, |
| 00:18:57 | 12 | but, you know, coupled with bad choices like drug abuse, |
| 00:19:01 | 13 | that can fuel a cycle of poverty.  Here's a guy working, |
| 00:19:04 | 14 | but also there's really no signs of ever having an |
| 00:19:06 | 15 | apartment or a home since he graduated high school. |
| 00:19:08 | 16 | He's just lived intermittently in hotels and shelters. |
| 00:19:14 | 17 | I think with mental health treatment, with |
| 00:19:16 | 18 | intensive drug abuse treatment, with opportunities he's |
| 00:19:20 | 19 | never had before in the Bureau of Prisons -- he wants to |
| 00:19:25 | 20 | focus on HVAC studies and culinary arts, commercial |
| 00:19:33 | 21 | driver's license education opportunities, and maybe even |
| 00:19:36 | 22 | an electrical license.  He's got enough intelligence to |
| 00:19:39 | 23 | do that, and he has a work ethic.  And if he can get |
| 00:19:42 | 24 | over mental health and substance abuse -- he's been |
| 00:19:48 | 25 | essentially sober now for several years as a result of |

00:19:53 1  this incarceration in this case.  And he shows some

00:19:58 2  signs even in the jail of wanting to better himself.

00:20:01 3          And he's still facing an enormous amount of

00:20:04 4  prison time.  But we ask the Court to fashion a

00:20:07 5  sentence that takes into account that there will be

00:20:10 6  supervised release and that Damoclean sword hanging over

00:20:17 7  him later.  He's someone with a promise to get back on

00:20:20 8  track, Your Honor.

00:20:25 9          THE COURT:  Well, let's hear from the

00:20:27 10 government.  And I think there are some people in

00:20:29 11 attendance who wish to speak.

00:20:31 12         MR. PUGH:  Yes, Your Honor.  Michele Simons

00:20:33 13 was victim A.B.'s guardian ad litem, and she'd like to

00:20:37 14 read a statement.

00:20:39 15         THE COURT:  The clerk has handed me what I

00:20:43 16 would identify as Ms. Simons's impact statement.  Ms.

00:20:48 17 Simons, is that what you want to read?

00:20:52 18         MS. SIMONS:  Yes.

00:20:53 19         THE COURT:  Thank you.

00:20:54 20         MS. SIMONS:  Thank you for the opportunity

00:20:55 21 to be here to address the Court today.

00:20:58 22         I've known A. since she was ten.  When we

00:21:01 23 met in 2014, she'd just entered foster care along with

00:21:06 24 her two younger siblings.  She was scared, and she was

00:21:09 25 confused.  Nine years later, today, A. has found

00:21:14  1  herself in an even scarier place, and I'm horrified that

00:21:17  2  any man could abuse A. in the ways that this man did.

00:21:20  3  She was a vulnerable child when she met him, and he

00:21:24  4  exploited her.  And the repercussions of that abuse

00:21:27  5  didn't stop when he was arrested.

00:21:29  6         A.'s not in court today, not because the

00:21:31  7  sentencing isn't important and it doesn't matter, but

00:21:34  8  because she's been on the run since she was 17.  Now,

00:21:37  9  at 18 and a half, she's aged out of foster care and her

00:21:40  10  whereabouts are unknown.  What I do know is that her

00:21:43  11  life has been a series of tragic events since her abuse

00:21:46  12  at the hands of Mr. Rudolph.  This has clearly had a

00:21:49  13  significant negative impact on the trajectory of A.'s

00:21:53  14  future.

00:21:58  15         A.'s perpetrator took much of her innocence

00:22:00  16  and her youth.  She will never get them back.  There

00:22:04  17  is no do-over with a picture perfect, happy ending for

00:22:07  18  A.  She was left to pick up the pieces of her life.

00:22:09  19  She was scared, she had lost her trust almost everyone,

00:22:12  20  especially men, and she felt alone, even though there

00:22:16  21  were adults surrounding her trying to help her navigate

00:22:19  22  the nightmare that had become her life.  She wouldn't

00:22:22  23  talk to me about the actual abuse; but those memories

00:22:25  24  were clearly with her every moment of every day.  He

00:22:28  25  took her ready smile, her easy laugh, and her optimism

| | | |
|---|---|---|
| 00:22:32 | 1 | for a fulfilling future. |
| 00:22:34 | 2 | A. is a bright girl, and unfortunately she's |
| 00:22:36 | 3 | had to spend the last four years trying to deal with |
| 00:22:39 | 4 | what happened to her at the hands of this man. She's |
| 00:22:42 | 5 | had to focus her energy on her survival and the |
| 00:22:42 | 6 | crippling mental health issues that came with it. She |
| 00:22:46 | 7 | fell significantly behind in her academic studies. She |
| 00:22:49 | 8 | didn't graduate high school with her peers. She didn't |
| 00:22:52 | 9 | head off to college or get a new job. Her future is |
| 00:22:55 | 10 | not what she had hoped. She spent the last four years |
| 00:22:58 | 11 | dealing with the abuse rather than enjoying and thriving |
| 00:23:02 | 12 | as a teenager. |
| 00:23:03 | 13 | She struggled to make friends after the |
| 00:23:04 | 14 | abuse, never really trusting anyone's intentions. Most |
| 00:23:10 | 15 | 18-year-old girls are seniors in high school, having |
| 00:23:11 | 16 | crushes, posting on TikTok, and learning to drive. A. |
| 00:23:14 | 17 | didn't have that opportunity. She's different because |
| 00:23:16 | 18 | he made her different. He changed her life in |
| 00:23:19 | 19 | horrible, unimaginable ways, and that can't be undone. |
| 00:23:22 | 20 | She can't just turn back the clock and act like none of |
| 00:23:25 | 21 | this happened. |
| 00:23:27 | 22 | While I don't know exactly what transpired |
| 00:23:29 | 23 | in A.'s life since she's been on the run, I do know a |
| 00:23:32 | 24 | few details, and none of them are good. She has lived |
| 00:23:35 | 25 | in cars and motels with men. She's received frequent |

00:23:38  1  visits from Raleigh Police Department.  She's been

00:23:40  2  arrested on several drug and weapons-related charges.

00:23:44  3  And she's given birth to a son in a public bathroom.

00:23:47  4  He's now in the care of Wake County.

00:23:49  5        It's hard for me to imagine what lies ahead

00:23:52  6  for A.  Her life is changed forever by this man, and he

00:23:56  7  should pay dearly for what he's taken from her.  30

00:24:00  8  years in jail seems like too little punishment for

00:24:03  9  taking a life, even if the victim is still alive.  He

00:24:06  10  took A.'s life, and he should be punished accordingly.

00:24:10  11        THE COURT:  Thank you.

00:24:11  12        When was your last interaction with her?

00:24:14  13        MS. SIMONS:  It was before she went on the

00:24:16  14  run.  She was in the hospital.  She had been picked up

00:24:18  15  by the police, and she was hospitalized on an

00:24:22  16  involuntary commitment, and she ran from the hospital.

00:24:25  17        THE COURT:  Do you see any opportunity for

00:24:28  18  future interaction with her?

00:24:31  19        MS. SIMONS:  Nothing would make me happier.

00:24:33  20  I have a very long history with A. and her siblings, and

00:24:37  21  I would love that if we could find her.  But A., once

00:24:41  22  she went on the run, she basically cut off myself and

00:24:44  23  sort of everyone affiliated with Social Services.  And

00:24:47  24  when she turned 18, it's her option whether or not she

00:24:51  25  wants to opt back in and receive services.

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
| 00:24:55 | 1  | THE COURT:  Well, thank you very much.                   |
| 00:25:10 | 2  | MR. PUGH:  Your Honor, I've already                      |
| 00:25:12 | 3  | highlighted that A.B. was barely 14 years old, had just  |
| 00:25:18 | 4  | been kicked out of her temporary housing, and had --     |
| 00:25:23 | 5  | it's an understatement -- a tumultuous life, severe      |
| 00:25:28 | 6  | mental health issues when she came upon Mr. Rudolph and  |
| 00:25:31 | 7  | his co-defendant, Mr. Gambrell.  And that was            |
| 00:25:35 | 8  | essentially her introduction to that lifestyle.  She     |
| 00:25:38 | 9  | had had trouble before, but nothing of this magnitude,   |
| 00:25:42 | 10 | of this type.                                            |

THE COURT:  Well, thank you very much.

MR. PUGH:  Your Honor, I've already highlighted that A.B. was barely 14 years old, had just been kicked out of her temporary housing, and had -- it's an understatement -- a tumultuous life, severe mental health issues when she came upon Mr. Rudolph and his co-defendant, Mr. Gambrell.  And that was essentially her introduction to that lifestyle.  She had had trouble before, but nothing of this magnitude, of this type.

And unfortunately, after that introduction, that is the trajectory she has taken since then.

She was prostituted to ten to 15 men a day over the course of three days, the three days after Christmas of 2018.

Mr. Rudolph, I would disagree with the framing of him as secondary in any way whatsoever to Mr. Gambrell, because Mr. Rudolph, it was his phone number even that was on these advertisements.  Mr. Gambrell took the photos, and Mr. Rudolph helped post them and helped monitor his own phone number on there.  Mr. Rudolph recruited a 17-year-old female to be present as the men came and went to help essentially the administrative aspects of this human trafficking business.

00:26:44 1          Mr. Rudolph filmed A.B. having sex with Mr.

00:26:50 2   Gambrell.  And we have Facebook messages where Mr.

00:26:52 3   Rudolph himself jokes about how A.B. gives good oral sex

00:27:00 4   and says:  Why would I pay for it when I can get it for

00:27:03 5   free?  Both of these men took their turn with this young

00:27:08 6   girl that they used to help get money.

00:27:16 7          And as I noted in Mr. Gambrell's sentencing,

00:27:20 8   what did she get from it?  Sent on this trajectory, and

00:27:24 9   she came away with multiple sexually transmitted

00:27:28 10  diseases.

00:27:33 11          Mr. Rudolph, as was noted, did graduate high

00:27:38 12  school.  He did attend some college courses.  And here

00:27:41 13  we have someone who struggled and did not ultimately

00:27:46 14  graduate the eighth grade is who he's pushing towards

00:27:53 15  this activity.

00:27:54 16          And while Mr. Gambrell is the one who took

00:27:59 17  the photos, it was only Mr. Rudolph who had a firearm

00:28:02 18  there in the room while all this was taking place.

00:28:06 19          So I really see no daylight between them as

00:28:11 20  far as relative culpability.

00:28:14 21          Given the Court's earlier ruling, it would

00:28:17 22  be a variance, but I do believe that the 210 months that

00:28:20 23  Mr. Gambrell received is appropriate just the same for

00:28:24 24  Mr. Rudolph.  And I believe that that could be

00:28:27 25  justified based on his having brought in the 17-year-old

00:28:31   1   to help supervise; based on, while it may not legally be

00:28:36   2   undue influence under the guidelines, the significant

00:28:39   3   age discrepancy as well as the heightened vulnerability

00:28:44   4   for someone in A.B.'s situation.  She really did not

00:28:48   5   have somewhere else to go, not in December wearing

00:28:52   6   slippers and pajamas.

00:28:57   7               THE COURT:  Thank you.

00:28:58   8               Mr. Tarlton, before I invite your client to

00:29:01   9   address the Court if he has anything he wishes to say,

00:29:04  10   would you like an opportunity to respond?

00:29:07  11               MR. TARLTON:  I think I've advanced our

00:29:10  12   points as best I could earlier, Your Honor.  And he

00:29:13  13   does have an allocution.

00:29:14  14               THE COURT:  I'll turn my attention to you,

00:29:16  15   Mr. Rudolph.

00:29:20  16               THE DEFENDANT:  Your Honor, I want to start

00:29:23  17   by saying that I'm sorry for the actions that I took in

00:29:26  18   this case.  I ask you to please forgive me for the

00:29:30  19   things that I have done.  I ask you to allow me to go

00:29:35  20   to prison and better myself more.

00:29:39  21               I've been in here for 51 months, and

00:29:43  22   throughout this whole time I have thought about the

00:29:45  23   things that went on, and I thought about my life, of

00:29:49  24   what I want to do when I get out, like go back to

00:29:53  25   school -- I mean, go back to school, go back to work,

00:29:58  1  church, take care of my family.

00:30:00  2          And while I'm in prison, I want to be able

00:30:04  3  to take classes and programs to where I can better

00:30:07  4  myself to where I can accomplish the goals I want to do

00:30:11  5  when I get out.

00:30:12  6          And I just ask you to have mercy on me

00:30:15  7  today.

00:30:16  8          THE COURT:  Thank you.  I've considered the

00:30:19  9  advice of the guidelines specifically and generally, and

00:30:23  10  the factors set forth in 18, United States Code, Section

00:30:27  11  3553.  It's my determination that a sentence of 180

00:30:32  12  months is a sentence in this case that's sufficient but

00:30:35  13  not greater than necessary.  That takes into

00:30:38  14  consideration all of the facts and circumstances.

00:30:42  15          There's a compelling need to discourage this

00:30:44  16  type of conduct, to promote respect for the law, to

00:30:50  17  protect those who are vulnerable.  There is a

00:30:56  18  compelling need for mental health treatment in your

00:30:59  19  instance.

00:31:02  20          All things considered, 180 months, and five

00:31:06  21  years of supervision.  I think that's going to be very,

00:31:09  22  very important in this case, your supervision for five

00:31:13  23  years upon your release.

00:31:15  24          You have the opportunity to show us that you

00:31:22  25  choose to act differently; you choose to be a

| | | |
|---|---|---|
| 00:31:27 | 1 | law-abiding, productive, honorable person.   And if |
| 00:31:35 | 2 | you're not law abiding, you'll be back before this |
| 00:31:40 | 3 | Court, and you could go back to prison in this case. |
| 00:31:43 | 4 |           All right.   I will recommend you for |
| 00:31:48 | 5 | further education and vocational training in prison.   I |
| 00:31:52 | 6 | will recommend you for mental health treatment.   And I |
| 00:31:56 | 7 | will recommend you for the most intensive substance |
| 00:31:59 | 8 | abuse treatment program that the Bureau can make |
| 00:32:03 | 9 | available. |
| 00:32:04 | 10 |           While you're under supervision for those |
| 00:32:06 | 11 | five years you cannot break any law.   You cannot |
| 00:32:09 | 12 | possess a weapon.   You cannot possess drugs. |
| 00:32:12 | 13 |           You will abide by the standard conditions in |
| 00:32:14 | 14 | effect in this district.   I tell defendants these are |
| 00:32:17 | 15 | things you should generally be doing anyway; for |
| 00:32:20 | 16 | example, don't be around convicted felons, don't |
| 00:32:23 | 17 | associate with them unless you have permission in |
| 00:32:27 | 18 | advance from your probation officer.   Don't be around |
| 00:32:31 | 19 | people who are breaking the law.   Work full-time.   Be |
| 00:32:38 | 20 | honest and truthful in all of your communications with |
| 00:32:40 | 21 | your probation officer.   Now, these and other standard |
| 00:32:44 | 22 | conditions I apply. |
| 00:32:46 | 23 |           Now, moving to the special ones for you, I |
| 00:32:48 | 24 | want to keep up the drug testing and treatment, mental |
| 00:32:51 | 25 | health treatment.   I want you to provide regular reports |

| | | |
|---|---|---|
| 00:32:55 | 1 | about your efforts to get a job, keep a job.  You need |
| 00:32:59 | 2 | financial assistance in terms of living within your |
| 00:33:09 | 3 | means, being appropriately responsible for yourself. |
| 00:33:16 | 4 | While I'm not going to impose a fine, I am going to |
| 00:33:19 | 5 | require you to provide to your probation officer pay |
| 00:33:22 | 6 | statements and other financial information when |
| 00:33:24 | 7 | requested.  Participate in a consumer credit or |
| 00:33:28 | 8 | financial counseling program.  Don't open up any new |
| 00:33:33 | 9 | lines of credit unless you have permission in advance |
| 00:33:36 | 10 | from your probation officer.  You will consent to |
| 00:33:38 | 11 | warrantless searches of your person, your home, your |
| 00:33:41 | 12 | motor vehicle, data storage devices if there's a |
| 00:33:46 | 13 | reasonable suspicion to think you're breaking the law or |
| 00:33:49 | 14 | violating supervised release, or if your probation |
| 00:33:53 | 15 | officer needs to search you in the lawful discharge of |
| 00:33:56 | 16 | the officer's duties.  There is this $5,000 assessment. |
| 00:34:02 | 17 | That's another reason to promote oversight by the |
| 00:34:05 | 18 | probation office of your finances.  And I'm going to |
| 00:34:23 | 19 | say that you'll start paying back that restitution 60 |
| 00:34:27 | 20 | days after you get out of prison at the rate of $50 a |
| 00:34:30 | 21 | month, unless the probation officer thinks a different |
| 00:34:34 | 22 | schedule is appropriate.  And I'm not going to |
| 00:34:37 | 23 | accumulate interest on that assessment. |
| 00:34:43 | 24 |             All right.  No direct or indirect contact |
| 00:34:54 | 25 | with the victim. |

| | |
|---|---|
| 00:34:56 | 1 |
| 00:34:59 | 2 |
| 00:35:02 | 3 |
| 00:35:05 | 4 |
| 00:35:11 | 5 |
| 00:35:14 | 6 |
| 00:35:17 | 7 |
| 00:35:23 | 8 |
| 00:35:26 | 9 |
| 00:35:30 | 10 |
| 00:35:33 | 11 |
| 00:35:36 | 12 |
| 00:35:39 | 13 |
| 00:35:42 | 14 |
| 00:35:46 | 15 |
| 00:35:54 | 16 |
| 00:35:58 | 17 |
| 00:36:01 | 18 |
| 00:36:03 | 19 |
| 00:36:07 | 20 |
| 00:36:10 | 21 |
| 00:36:13 | 22 |
| 00:36:15 | 23 |
| 00:36:18 | 24 |
| 00:36:24 | 25 |

Submit to a psychosexual evaluation by a qualified mental health professional.  Participate in sex offender treatment as directed by the probation office.  That may include physiological testing. Don't possess any child pornography or simulated child pornography.  Comply with the Sex Offender Registration and Notification Act.  No communication with people under the age of 18 unless it's in the presence of the guardian or parent on the condition you've notified of them of your sexual history and you have approval in writing in advance from your probation officer.  I'm not limiting, though, your contact with 18-year-olds or people younger than 18 who are engaged in ordinary commercial transactions; for example, ticket takers at a movie theater or clerks at a fast food restaurant. Don't purchase any recording device unless you have approval in advance by the probation office.  Don't procure anything that could be connected with the internet unless you have permission in advance.  There will be unannounced searches that you'll agree to of your data storage devices.  You'll consent to the installation of software or systems that will allow the probation office to monitor your computer activity. Don't procure any counterforensic tools that could defeat the probation office's oversight.  You're not

00:36:28 1 going to work as a volunteer with children under the age

00:36:31 2 of 18.

00:36:37 3 If I haven't said it already, a $100 special

00:36:40 4 assessment.

00:36:43 5 All right. Before I impose this finally,

00:36:48 6 from the probation office's perspective -- I realize I

00:36:50 7 need to communicate on the record that the other charges

00:36:53 8 against you now are dismissed.

00:36:56 9 Is there anything further from your office?

00:36:58 10 THE PROBATION OFFICER: Nothing further,

00:36:59 11 Your Honor.

00:37:00 12 I was just going to ask for clarification;

00:37:02 13 was it one thousand dollars for JVTA?

00:37:06 14 THE COURT: I said $5,000.

00:37:10 15 THE PROBATION OFFICER: Thank you.

00:37:14 16 THE COURT: From the government's side of

00:37:15 17 the room, is there anything?

00:37:15 18 MR. PUGH: Your Honor did enter the

00:37:17 19 restitution order?

00:37:20 20 THE COURT: Let's see. I've got a

00:37:21 21 forfeiture order. Is that the one?

00:37:23 22 MR. PUGH: Excuse me, the forfeiture order,

00:37:26 23 yes, at 123.

00:37:27 24 THE COURT: Yes, that would be entered as a

00:37:29 25 matter of course.

| | | |
|---|---|---|
| 00:37:30 | 1 | It's been consented to in the plea |
| 00:37:32 | 2 | agreement, hasn't it? |
| 00:37:34 | 3 | MR. TARLTON:  Yes. |
| 00:37:34 | 4 | THE COURT:  This is related to the iPad, the |
| 00:37:37 | 5 | Cobra firearm, and the cellular phone.  Yes, that will |
| 00:37:41 | 6 | be entered.  Thank you. |
| 00:37:42 | 7 | MR. TARLTON:  Just to clarify, Your Honor. |
| 00:37:44 | 8 | I think the JVTA $5,000 or super special assessment by |
| 00:37:48 | 9 | the statute only applies for non-indigent people. |
| 00:37:54 | 10 | THE COURT:  The probation office, I'll be |
| 00:37:56 | 11 | quite candid, has recommended to me, and I accepted the |
| 00:38:00 | 12 | recommendation, that it be assessed. |
| 00:38:03 | 13 | Is he correct, though?  Because he's |
| 00:38:05 | 14 | indigent. |
| 00:38:10 | 15 | THE PROBATION OFFICER:  Yes, that is |
| 00:38:11 | 16 | correct.   That's in the statute. |
| 00:38:12 | 17 | THE COURT:  If you're indigent? |
| 00:38:15 | 18 | THE PROBATION OFFICER:  It says "for |
| 00:38:16 | 19 | non-indigent people."  I would read it like that, yes. |
| 00:38:24 | 20 | MR. TARLTON:  He's indigent, Your Honor.  I |
| 00:38:27 | 21 | don't want this to be an issue later on. |
| 00:38:30 | 22 | THE PROBATION OFFICER:  I would agree with |
| 00:38:31 | 23 | that. |
| 00:38:32 | 24 | THE COURT:  Do you want to be heard on that? |
| 00:38:32 | 25 | I think this is the first time I've worked through this |

```
00:38:35   1    issue.
00:38:35   2              MR. PUGH:  No, Your Honor.
00:38:36   3              THE COURT:  All right  so I take away the
00:38:37   4    assessment.
00:38:38   5              Thank you, Mr. Tarlton.
00:38:40   6              MR. TARLTON:  Yes, Your Honor.
00:38:41   7              THE COURT:  You can appeal if you think
00:38:43   8    something is really wrong with the sentence or with the
00:38:45   9    conviction.  But you do need to move quickly.  A
00:38:48  10    defendant usually only has 14 days to file a notice of
00:38:52  11    appeal.  If you can't afford the cost of doing that, you
00:38:56  12    can apply for permission to appeal for free.  And if you
00:39:01  13    request, the clerk will fill out the appeal paperwork.
00:39:04  14              People can change.  You've got a lot of
00:39:06  15    changing to do.  You need to associate yourself with
00:39:09  16    people that have your best interest in mind.  You need
00:39:12  17    to think about the consequences of your actions.  I
00:39:16  18    think you've got intelligence.  I think you can have
00:39:22  19    gainful employment, have or work towards a stable living
00:39:29  20    environment.
00:39:30  21              I'm glad to know that you're interested in
00:39:33  22    bettering yourself in prison.  And as you show those
00:39:39  23    jailers, those who work in the Federal Bureau of Prisons
00:39:44  24    that you follow directions, that you don't make trouble,
00:39:50  25    that you want to better yourself, you'll see some
```

00:39:53  1   opportunities coming your way.  So it's what you make

00:39:57  2   of them.

00:40:01  3                    Good luck.   Thank you.

          4                    (Concluded at 3:11 p.m.)

          5                         - - -

          6

          7

          8               **C E R T I F I C A T E**

          9

         10      I certify that the foregoing is a correct transcript

         11   from the record of proceedings in the above-entitled

         12   matter.

         13

         14   /s/ Tracy L. McGurk_____              ___6/21/2023___

         15   Tracy L. McGurk, RMR, CRR                   Date

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25